UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUINGLIN ZENG, A046-472-647,

                              Petitioner,        DECISION AND ORDER

-vs-

                                                17-CV-6334 (CJS)

JEFF B. SESSIONS, Attorney General of the
United States of America, et al.,

                              Respondents.
_____

## INTRODUCTION

Quinglin Zeng ("Zeng" or "Petitioner"), a citizen of the Peoples Republic of China ("China"), is subject to a final order of removal, as an alien convicted of an aggravated felony offense and a firearm offense. Zeng, who is not appealing such order or opposing his removal in any way, has been in the custody of the Department of Homeland Security ("DHS") for approximately nine (9) months, while DHS has been attempting to obtain the travel documents required to remove him to China. In this action filed pursuant to 28 U.S.C. § 2241, Zeng argues that his continued detention is unreasonable and unlawful, based, *inter alia*, on the Supreme Court's decision in *Zadvydas v. I.N.S.*, 533 U.S. 678, 121 S.Ct. 2491 (2001) ("*Zadvydas*"). The Court disagrees, and denies the application for writ of habeas corpus.

## BACKGROUND

The facts concerning Zeng's case are generally not disputed, except insofar was Zeng disputes the likelihood that he will be removed in the foreseeable future. Zeng is a native and citizen of China, who entered the United States on November 12, 1997 as a lawful permanent resident. On June 12, 2014, Zeng was convicted, in New York State, of Attempted Robbery in the First Degree and Criminal Possession of a Weapon in the Second Degree, and sentenced to a term of imprisonment. On January 14, 2015, Zeng was served

1

with a Notice to Appear, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (conviction of an aggravated felony) and 8 U.S.C. § 1227(a)(2)(C), (firearm offense). On June 25, 2015, an Immigration Judge ordered that Zeng be removed to China.

On November 10, 2016, upon his release from prison in New York, Zeng was taken into custody by DHS, where he remains to this day. On November 22, 2016, DHS sent a "presentation packet" to the Chinese Consulate, requesting a travel document for Zeng. The request was supported by various documentation of Zeng's identity, including copies of his birth certificate, passport and immigrant visa.

In January 2017, DHS reviewed Zeng's custody status and continued his detention, after finding that he posed a threat to the safety of the community, and was a flight risk. In that regard, on or about January 30, 2017, DHS issued Zeng a "Decision to Continue Detention," which reviewed the history of his case, including the fact that he had previously been ordered deported for crimes of moral turpitude, but an Immigration Judge cancelled his removal, after which Zeng went on to commit the felonies for which he is now facing removal. On May 17, 2017, DHS issued another "Decision to Continue Detention," which notes, *inter alia*, that "ICE is currently working with the government of China to secure a travel document," and that "[a] travel document from the Government of China is expected."

Zeng has no appeals pending, and there is no impediment to his removal to China, other than China's willingness to provide a travel document.

On May 26, 2017, Zeng, proceeding *pro se*, filed the subject petition [#1], which purports to assert three claims: 1) his continued detention violates "8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas*," because his removal is not likely to occur in the reasonably foreseeable future; 2) for the same reasons, his continued detention violates "substantive due process"; and 3) Respondents have violated his right to procedural due process by failing to review his custody status in a "neutral and impartial manner."

On July 3, 2017, Respondents filed an Answer and Return [#5] to the Petition and a Memorandum of Law [#6]. The Memorandum of Law [#6] includes the following points: 1) Zeng's continued detention is lawful under 8 U.S.C. § 1231(a) and *Zadvydas*, since he has not shown that "there is no significant likelihood of removal in the reasonably foreseeable future"; 2) DHS has been in "regular contact with representatives of the Chinese Consulate regarding the request for a travel document for Zeng"; 3) China's process for issuing travel documents "generally takes a number of months, as China must complete a lengthy investigation before a travel document is issued"; 4) China has not indicated that it is unwilling to accept Zeng; 5) Zeng's petition is based solely on the passage of time, as opposed to any evidence that China will not issue a travel document; and 6) Zeng has been provided with due process as required by the pertinent statutes and regulations, including 8 CFR § 241.4. Respondents maintain that the Court should dismiss the petition.

On July 26, 2017, Zeng filed a Traverse [#7], in which he essentially reiterates his argument that the passage of time to date (9 months) indicates that China is unlikely to issue a travel document. Further, Zeng contends that government statistics show that the number of criminal Chinese nationals for whom China has been issuing travel documents has been decreasing in recent years.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241 (8 U.S.C. § 1231), which authorizes detention of aliens after the issuance of a final removal order.

Zeng is confined under the latter statute, which provides authority to detain an alien once the decision on removal is made, and the removal order becomes final. In that regard, INA § 241(a) requires the Attorney General to accomplish removal within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens—like Petitioner—who have been determined to be a threat to the community or a risk of flight, beyond the expiration of the ninety-day removal period. *See*, INA § 241(a)(6).[1]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal order detention with the Fifth

---

[1] *See*, 8 U.S.C.A. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).").

Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts ...." *Id*. at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*.

In the instant case, Zeng is not entitled to habeas relief because he has not shown that there is no significant likelihood of his removal to China in the reasonably foreseeable future. To the contrary, the record indicates, first, that there is no institutional barrier to Zeng's removal, since China accepts a significant number of aliens, including criminal aliens, from the United States each year. Additionally, the record indicates that DHS has provided the Chinese Consulate with documentary evidence concerning Zeng's identity, including a birth certificate, visa and passport, which should facilitate China's ability to confirm his identity. Moreover, in this case the mere passage of time does not indicate that China is unwilling to issue a travel document; rather, Respondents maintain, and Zeng does not dispute, that in general, the process of obtaining a travel document from China can be

lengthy.

In sum, Zeng has not met his initial burden under *Zadvyas*. However, even assuming, *arguendo*, that Zeng had met his initial burden under *Zadvydas*, the Court would nevertheless find that Respondents have met their burden on rebuttal. In short, the evidence does not establish that there is no significant likelihood of removal in the reasonably foreseeable future. For these same reasons, Zeng also has not shown that he is being denied substantive due process.

As for the remaining aspect of Zeng's petition, it is notable that his Traverse [#7] does not repeat his contention that he was denied procedural due process, nor does it challenge the assertions in Respondent's Answer and Return [#5] on that point. Accordingly, the Court deems that claim to either be abandoned or to lack merit.

## CONCLUSION

Zeng's petition is denied, and this action is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated: Rochester, New York
      August 18, 2017      ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge